UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

MARK A. VAUGHN                                          CIVIL ACTION

v.                                                      NO. 04-1633

ST.TAMMANY PARISH SCHOOL BOARD,                         SECTION "F"
JOSEPH C. BUCCARAN, and GAYLE SLOAN

ORDER AND REASONS

Before the Court is the defendants' Motion for Summary Judgment. For the reasons that follow, the motion is GRANTED in part and DENIED in part.

Background

The plaintiff, Mark Vaughn, is Assistant Principal of Slidell High School. For several years, he worked with then-Principal Joseph Buccaran, who retired in 2003. From late 2000[1] to mid-2002, Buccaran made comments and engaged in conduct of a sexual nature toward Vaughn. On November 5, 2001, Vaughn complained to the School Board, which investigated his complaints and determined that both men had exercised poor judgment. On August 12, 2002, Vaughn filed a complaint with the Equal Employment Opportunity Commission,

---

[1] Plaintiff says the harassment began shortly after August 24, 2000, when Vaughn disclosed to Buccaran that he might be gay or bisexual and asked Buccaran's advice as to whether his sexual orientation would conflict with his current position and career advancement. Vaughn, in fact, admits to being homosexual and says that he phrased his disclosure (he "might be gay or bisexual") in such a way because he feared Buccaran might react negatively to his disclosure.

1

which ultimately made a determination that there was reason to believe that the School Board had violated Title VII.

Vaughn filed this action on June 10, 2004 for sexual harassment and retaliation in violation of Title VII of the Civil Rights Act and Louisiana law as against the School Board, as well as 42 U.S.C. § 1983 claims for sexual harassment and retaliation against the School Board, Joseph Buccaran, and Superintendent Gayle Sloan.  Defendants now move for summary judgment.

## I. Standard for Summary Judgment

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law.  No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986).  A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion.  See id.  Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate.  Id. at 249-50 (citations omitted).  Summary judgment

is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. Id. Hearsay evidence and unsworn documents do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987). Finally, in evaluating the summary judgment motion, the court must read the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255.

## II. Application

### A. § 1983 Claims and LEDA Claim

Defendants contend that they are entitled to summary judgment on (i) plaintiff's § 1983 claims for sexual harassment and retaliation against all three defendants; and (ii) plaintiff's claims under the Louisiana Employment Discrimination Act, La.R.S. 23:301. Defendants point out that those claims are time-barred and add that plaintiff failed to oppose their summary judgment motion respecting these claims. The Court agrees. Plaintiff indeed did not assert any arguments in opposition to defendants' contention that these claims are time-barred and, finding merit in defendants'

motion on these grounds, finds summary judgment appropriate, except for two of the state law retaliation claims.

Plaintiff's § 1983 claims and all but two of his LEDA claims have prescribed.  Because federal courts borrow the forum state's general personal injury limitations period, the statue of limitations for plaintiff's § 1983 claims is one year.  See Burrell v. Newsome, 883 F.2d 416 (5th Cir. 1989).

Further, plaintiff's LEDA claims are subject to a one-year prescriptive period that may be suspended for six months during an administrative investigation.  La.R.S.23:303.  Plaintiff's state law hostile work environment claim is therefore untimely because he did not file suit until June 10, 2004; his claim would have expired 18 months after March 2002, when plaintiff alleges Buccaran brushed against his backside.  However, his state law retaliation claims are different; a failure to promote is a discrete act for which the prescriptive period begins to run on the date the employer denies the promotion.  Aronzon v. Southwest Airlines, 2004 WL 57079, at *3 (E.D. La. Jan. 9, 2004) (Vance, J.).  Again, plaintiff filed this lawsuit on June 10, 2004; considering that plaintiff's LEDA retaliation claim involves five separate charges against the School Board failing to promote him, the fourth and fifth ones, which took place in May and July 2003, are the only two that survive.

Accordingly, plaintiff's § 1983 claims are time-barred and must be dismissed.  Plaintiff's LEDA claims are also time-barred,

with two exceptions:  his state law retaliation claims  -- the May and July 2003 promotions he was denied -- survive.

   B.  Hostile Work Environment Claim[2]

   Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's...sex."  42 U.S.C. § 2000e-2(a)(1).

   It is well-settled that sex discrimination consisting of same-sex sexual harassment is actionable under Title VII.  See Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 79 (1998).  However, before determining whether same-sex harassment is severe or pervasive enough to create a hostile environment, the Court must first determine whether the harasser's conduct constitutes sex discrimination.  See La Day v. Catalyst Technology, Inc., 302 F.3d 474, 478 (5th Cir. 2002).  One way to establish that an incident of same-sex harassment was "because of sex" is to "show that the alleged harasser made 'explicit or implicit proposals of sexual activity' and provide credible evidence that the harasser was homosexual."  See id.  Neither party addresses this threshold determination, but the Court finds that there is sufficient

---

   [2] The School Board's contention that Vaughn's Title VII hostile work environment claim is time-barred is without merit. See National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002) (noting that "[a] hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice'").

5

evidence in the record suggesting that Buccaran's proposals of sexual activity were borne of sexual attraction, because of Buccaran's tasteless compliments on Vaughn's appearance, his attempt to kiss him, and his offer to perform oral sex on him.[3] The Court finds that the complained of conduct was "because of sex."

To establish a hostile work environment claim, a plaintiff must prove that: (i) he belongs to a protected class; (ii) he was subjected to unwelcome harassment; (iii) the harassment was based on sex; (iv) the harassment affected a term, condition, or privilege of her employment; and (v) her employer knew or should have known of the harassment and failed to take prompt, remedial action. Hockman v. Westward Communications, LLC, 407 F.3d 317, 325 (5th Cir. 2004).

The only issues for this Court on summary judgment is whether a genuine issue of material fact exists as to whether the harassment affected a term or condition of employment or whether defendant failed to take prompt, remedial action. Based on the record, the Court cannot find, as a matter of law, that the School Board is entitled to summary judgment on these issues.

---

[3] This satisfies one of the types of evidence that the Fifth Circuit has determined to be credible proof that a harasser is homosexual. See id. (noting that the following evidence constitutes "credible" proof that a harasser is homosexual: "evidence suggesting that the harasser intended to have some kind of sexual conduct with the plaintiff rather than merely to humiliate him for reasons unrelated to sexual interest").

Harassment affects a term, condition, or privilege of employment when it is "sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986) (emphasis added). Courts look at the totality of the circumstances to determine whether an environment is sufficiently hostile, examining such factors as (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct is physically threatening or humiliating (or a mere offensive utterance); and (4) whether it unreasonably interferes with the plaintiff's work performance. Harris v. Forklift, 510 U.S. 17, 23 (1993). Moreover, the challenged conduct must be both objectively and subjectively offensive. Shepherd v. Comptroller of Pub. Accounts, 168 F.3d 871, 874 (5th Cir. 1999) (citing Harris v. Forklift, 510 U.S. 17, 21-22 (1993)). Additionally, psychological harm may also be taken into account.[4] Harris, 510 U.S. at 23.

Vaughn describes a series of sexual comments: compliments on his appearance (that he is "looking hot"); soliciting the plaintiff to have sexual encounters with him; making other comments about how he (Buccaran) was a great lover and how he could not sleep when he was in bed with his wife because he was thinking about Vaughn.

---

[4] As for psychological harm, Vaughn also says that the harassment took a severe emotional toll on him, he was diagnosed with major depression, and had to take nearly a two year leave of absence from the school.

Buccaran himself has acknowledged that he suggested to Vaughn that he could perform oral sex on him, saying: "I could go down on you...or [d]o you expect me to go down on you..."

Vaughn says that, when he rejected Buccaran's sexual advances, Buccaran became highly critical of Vaughn's work performance, which interfered with his ability to do his job.[5]  Vaughn argues that his harassment claim therefore survives summary judgment because he has shown that the complained of physical and verbal conduct was sufficiently severe or pervasive.  He also points to two instances of sexual touching by Buccaran (attempted open mouth kiss and brushing of hand across Vaughn's butt).  Actual physical "touching...increases the severity of the situation."  Worth v. Tyer, 276 F.3d 249, 268 (7th Cir. 2001).

Reading the facts in the light most favorable to the plaintiff, the Court agrees that the totality of Buccaran's sexual comments and conduct clearly raises a genuine issue of material fact as to whether the harassment was severe or pervasive.

The School Board seeks to avail itself of an affirmative defense for its conduct.  To avoid liability for a hostile environment claim, the Board must show that it "exercised reasonable care to prevent and correct promptly any . . . harassing

---

[5] To survive summary judgment, the harassment must be "so severe [or] pervasive that it destroys a protected classmember's opportunity to succeed in the workplace." Shepherd, 168 F.3d at 874.

behavior," and that Vaughn "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998). The School Board contends that it has a sexual harassment policy and the plaintiff availed himself of it. But Vaughn disputes the effectiveness of the policy, contending that the School Board failed to exercise reasonable care to prevent and correct the harassment.

It is not necessary for the Court to decide whether the School Board's sexual harassment policy meets the first prong of the defense, because Vaughn has raised a fact issue over the School Board's ability to meet the second prong of the defense. Vaughn contends that, in compliance with the School Board's policy, he reported the harassment on November 5, 2001, that a deficient and biased investigation ensued, that he was never advised as to the resolution of the complaint or the outcome of the investigation despite his persistent efforts to find out, and that no action -- not even reprimanding Buccaran -- was ever taken. Vaughn insists that, after his first report, Buccaran engaged in rude and belittling conduct toward him, but he did not make a second complaint because he felt the system failed him the first time. Thus, he urges that he acted reasonably in not making a second complaint about Buccaran. Vaughn has raised a genuine issue of material fact as to whether he acted reasonably in failing to

9

report Buccaran's continued harassment of him after his first complaint. Therefore, the School Board is not entitled to summary judgment on this claim.

B.  Retaliation

Summary judgment is also inappropriate on plaintiff's Title VII retaliation claim.

Title 42, United States Code, § 2000e-3(a) precludes an employer from discriminating against an employee "because he has opposed any practice made unlawful by this subchapter...."

The McDonnel Douglas burden-shifting framework applies to retaliation cases brought under a pretext theory. Septimus v. The University of Houston, 399 F.3d 601, 608 (5th Cir. 2005).

The plaintiff must establish a prima facie case of retaliation: (1) that the employee engaged in [an] activity protected by Title VII; (2) the employer took adverse employment action against the employee; and (3) a causal connection exists between that protected activity and the adverse employment action. Burger v. Cent. Apartment Mgmt., 168 F.3d 875, 878 (5th Cir. 1999). Next, the defendant must carry its burden by articulating a legitimate, non-discriminatory reason for the employment action.

The defendants say plaintiff cannot establish the causation element.[6] Vaughn counters that a causal connection exists between

---

[6] The Fifth Circuit has "consistently held that in retaliation cases where the defendant has proffered a nondiscriminatory purpose for the adverse employment action the

his complaint against Buccaran and his failure to achieve any of the five available principal positions.

"[Q]ualifications evidence may suffice...to show pretext." Ash v. Tyson Foods, Inc., 126 S.Ct. 1195, 1197 (2006). For four of the individuals who were promoted instead of him, Vaughn points to the resume's of those individuals promoted and compares his qualifications to theirs.[7] He also notes that defendants have admitted that he was qualified for each of the positions. Vaughn contends that both the makeup of the selection committee[8] and the timing of each selection decision, that is, the positions became available after Vaughn had complained to the School Board, provide

---

plaintiff has the burden of proving that 'but for' the discriminatory purpose [he would have been promoted]." Id. (citations omitted). The Supreme Court has recently considered how harmful an action must be to constitute retaliation. See Burlington Northern & Santa Fe Ry. Co. v. White, No. 05-259, -- S.Ct. --, 2006 WL 1698953 (June 22, 2006) ("A plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.') (quotation omitted).

[7] As to the fifth principal position, he concedes that he was less experienced, but contends that the selection committee wrongly disregarded the candidate's "possibly criminal and potentially endangering activities" when making their selection. (Vaughn adds that in this instance the candidate was not qualified for the principal position because he had mishandled several student complaints of sexual misconduct by a teacher and coach under his supervision.)

[8] The committee supposedly consisted of several members who had knowledge of Vaughn's complaint. Also, he points to testimony that the superintendent played an "active" role in each selection.

further evidence of a retaliatory motive. "[W]here there is a close timing between an employee's protected activity and an adverse employment action," the Fifth Circuit cautions, "the employer must offer a legitimate, nondiscriminatory reason that explains both the adverse action and the timing." Shakelford v. Deloitte & Touche, LLP, 190 F.3d 398, 408 (5th Cir. 1999) (emphasis in original).

Because the Court finds that there is a genuine issue of material fact as to whether plaintiff would have been promoted to any one of the five principal positions but for his complaint about Buccaran, summary judgment is denied.

Accordingly, the defendant's motion for summary judgment is GRANTED in part and DENIED in part. The plaintiff's § 1983 claims against the individual defendants are hereby dismissed; the plaintiff's Louisiana Employment Discrimination Act claims are dismissed, with two exceptions: his state law retaliation claims against the School Board regarding the May 2003 and July 2003 promotions survive. His Title VII harassment and retaliation claims against the School Board also survive.

New Orleans, Louisiana, July 5, 2006.

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

12